Ladies and gentlemen, we'll now pick up the Rodriguez v. Ashcroft case, 0272098, Rodriguez v. Ashcroft. Each side has 10 minutes. Good morning. Good morning. May it please the Court, my name is Lana Vernon. I'm with Mayor Brown, Roe and Maugh. Seated at Council table is Teresa Cummings, also of my firm. I was appointed by this Court to represent Ms. Rodriguez Pena in this appeal, and I appreciate the opportunity to have argument this morning. We're grateful for your having accepted the appointment. Thank you. I'm assuming that the Court's familiar with the facts presented in the legal arguments in the brief, so I want to jump right into the issue that I, that the Petitioner feels is what requires remand to the BIA, and that is the issue of credibility in this case, and the credibility determinations that were made both by the IJ and the BIA. And I want to start out by saying that we're not asking the Court to second-guess the finding of an administrative agency. The Petitioner is asking that the case be remanded so that she could have the process that's due her. We assert that the credibility determination is fatally flawed and requires remand, and that remand is the only appropriate remedy. Didn't the IJ say, even assuming she's credible, that she still hadn't established that she was harmed? That's right. She was forced persecution by osmosis. That's right. So let's assume, for the sake of discussion, that her story is deemed to be credible. What do we do with those other findings? Well, I think that under the case law in this circuit, it's inappropriate to go into analysis of what if she's deemed to be credible. She... I mean, that's because that's what the IJ did. The only reason I'm saying that, that's what the IJ said. That's what the IJ did. When she proceeded to the BIA, and, well, let me start by citing a case that I provided to counsel for the government this morning. This was actually filed two days ago by this court, and I'd like to seek leave to cite this case to you. It just came to my attention last night. What is it? This is the Thomas v. Ashcroft case, and it's not been assigned a F-3rd number. The number of the case is 02-71656. And what this case... This case involves credibility determinations in whether or not the record supports or there's substantial evidence to support a determination, and it reiterates the longstanding case law in this circuit that the IJ must provide a to move to an analysis and say, even if the applicant were credible, I don't find that she is entitled to relief under the statute. Because, in fact, in the case, in the Thomas case, in the facts of this case, which, again, I just, you know, read last night, the court says that these issues are heavily fact-dependent and that because the IJ's concerns about the credibility were unclear, that the court, and because, and I quote from the case, we address the question whether the IJ's finding that Michelle's testimony was not totally credible, in quotes, is supported by substantial evidence. But I thought Judge Silverman was saying, okay, let's assume we find there wasn't an adequate credibility determination, and we decide that we have to accept her testimony as credible. But what about other issues covered by the IJ? Why would she, assuming she's credible, what are the remaining issues that would affect whether she gets asylum relief? Well, I do understand the question, and I will address Because Thomas certainly doesn't mean that if there's a credibility determination that's error, that in every single case, it has to go back to the agency, and you can never look at other issues. No, and I'm not asserting that that's what Thomas stands for. Then what is your response to Judge Silverman's question, I guess? Okay, well, my response is that under the law of the circuit, the Menimbo case, when the BIA makes a negative credibility finding in the first instance on appeal to the BIA, remand is required. And this case is discussed in the reply brief at pages 11 and 12. And that is exactly what happened in this case. And the court said, we conclude that because the IJ failed to make a sufficient credibility determination, the BIA violated Menimbo's right to due process by implying such a finding on review without remanding for a legally sufficient determination, otherwise affording notice and opportunity to respond. And the reason I don't mean to be argumentative or not answer the question, I will move on to the other issues in the case regarding the imputed political opinion. But I think here, the issue of credibility is so tied up in what was found and the legal issues in this case. And let me just provide examples. And so I think that will shed light on what this argument is. For example, the government will argue that tied up in the legal determination is whether or not Ms. Peña's children are still in Guatemala or whether they were harmed. And doesn't that show that, you know, she's able to return to the country or why are they still there and she's here? And in the credibility finding made by the BIA, first, the IJ did not touch upon credibility issues relating to where her children are, except to, at pages, and I want to direct the Court's attention, in the ER 43 through 45, questioned Ms. Peña at length, the IJ did, about where her children are and whether they came to the country with her. And there seems to be confusion about that in the record. And when you read the testimony of Ms. Peña and the affidavits of the, the affidavits that she submitted in support of her application, it's not clear from the record what is actually happening with respect to where her children are, whether they came with her to the United States. She fled Guatemala in 1995. But let's suppose that she doesn't have any children. What does that have to do with the basis upon which she claims persecution as put by Judge Silverman by osmosis? Okay. I'll move on and answer that question. What's her, on account of what? On account of imputed political opinion or political opinion on, on both bases, Ms. Peña in the record shows that she was threatened repeatedly with, with death and harmed her children if she did not assist the, the guerrillas or ask her companions, sometimes called husband here, to join them. And what I thought was, it was like a recruitment case where they're not trying to recruit her, but they're trying to recruit this guy. She's her husband or boyfriend or whatever. Right. And she doesn't help. But I thought we had precedent that said that a mere, and by mere I don't mean to say it's not, you know, devastatingly important to the people involved, but precedent that says recruitment or retaliation by guerrillas for declining recruitment isn't sufficient to satisfy the asylum standard that persecution be on account of race, religion, membership in a particular social group or whatever. Yes, Your Honor. And I think, I think you're referring to Elias Zacharias and cases that on the flip side, one in a recent case that was, I cited in a 28-J letter that was submitted to the court talked about whether or not extortion or blackmail, I think it was the Jaheed versus Ashcroft case, could constitute persecution and the court held that it can. And the court said persecutory conduct may have more than one motive. And so long as one motive is one that has been satisfied. In this case, the record shows that Mr. Lopez worked for the government. That's something that the BIA and the IJ don't address. And that he was an air traffic controller. They wanted him to help him use his job to help them. And this is a recruitment case plus more. And that has survived in the circuit, survives Elias Zacharias. And the reason that is so is there, there's evidence in the record to show that the guerrillas imputed a political opinion to Ms. Pena by virtue of the fact that her close companion works for the government. And that's something that was not explored in this record. However, in the Thomas case, I want to draw the court's attention to a case where the petitioner shouldn't be penalized for not, you know, particularly articulating the precise basis for relief. And in that case, that had to do with a familial or social group. I'd like to, I have five seconds. I'd like to reserve time if possible. Thank you. We'll round it up to ten seconds for you. May it please the court. My name is Steve Flynn. I represent the respondent, the attorney general in this case. Once again, the focus of this court, and I'll stick to that, is even if we assume her testimony to be credible, which both the board and the IJ did in their alternative findings, she still is statutorily ineligible for asylum. Let me address it in two specific areas. The fact that there was no persecution and the fact that she has no well-founded fear. The key statutory phrase, as alluded to or specifically mentioned by this court, is, on account of. Petitioner alleges the gorilla's imputed contrary political opinion to her. First off, all evidence demonstrates that she was apolitical. Secondly, the gorilla, and this second part looks at both her words and her actions. The gorilla's could not have imputed anything to petitioner as she never said anything to the gorilla's in the three brief encounters that she had with them. She never refused their demands, never resisted. She said nothing in these three brief encounters. Even her actions or as petitioner's counsel calls it, hazardous neutrality. Why? Because these three brief encounters occurred in February of 95. She left in March of 95. In such a short time span and based on the fact that she said nothing, the gorilla's could not have possibly interpreted, construed, or imputed anything to her. Finally, and most importantly, petitioner's political views and opinions were utterly irrelevant to the gorilla's. The gorilla's sought to recruit her boyfriend. Once again, did they care about her boyfriend's politics? No, they cared about his position as an air traffic controller. And why were they trying to recruit an air traffic controller? We can speculate as to any number of reasons, but the record doesn't tell us. And in fact, petitioner said she didn't know why. But Mr. Wilk... I don't There's nothing to show that the gorilla's were... they were concerned with his position as an air traffic controller. In fact, he says that in his statement that they wanted him because he was in his affidavit. They wanted him as an air traffic controller. The fact that he worked for the government was irrelevant to them. Similarly, petitioner's politics were irrelevant because they were just trying to recruit this guy, Mr. Lopez. So therefore, her politics were utterly inconsequential to the government's. They were just concerned with her relationship with Mr. Lopez. As to the second issue, once again, even assuming her to be credible, the fact that she has no fear. Her professed fear of returning of the gorillas and returning to Guatemala is undercut by a crucial factor. Her two sons remained in Guatemala. And that's clear from the record. In fact, she specifically says, yes, I left my two sons back in Guatemala. Now, the gorillas allegedly threatened to kill both her and her children, her two sons. However, she abandoned her children and fled the country or left the country because she said that it would be too risky or too dangerous for them to travel with her. Now, when we're talking about her children, in 1995, her sons were 20 and 16, which is more dangerous for her to, for a 38-year-old woman to leave the country for the United States accompanied by her two practically adult sons or for her to leave them behind in Guatemala where they've been specifically threatened, according to her testimony, by gorillas with death and petitioner alleges that the gorillas are everywhere. So that not only undercuts her professed fear, but it also militates against her allegation that the threat posed to her by the gorillas was real. She says it's more dangerous for them to go to the United States with her than to remain in a country where they're allegedly threatened by gorillas with death. Her professed fear is further undermined by the fact that Mr. Lopez, the ostensible target of the gorillas recruitment efforts, remained in Guatemala, stayed at his job for another three years until his retirement in 1998. Now, looking at Mr. Lopez's statement, which is at page 121 of the administrative record, he says that he too was constantly threatened with death by, that's a quotation, threatened with death by the gorillas. However, he didn't flee. He remained in his job for three more years until he retired. And we've got to keep in mind that he was the specific target of the gorillas, but he nevertheless managed to stay there and apparently has remained untroubled for the remainder of the time. Finally, Patricia did not flee Guatemala due to persecution. Her departure, as she mentioned, was prompted by three factors, and the government submits their co-equal factors. One, she says that Mr. Lopez was mistreating her. Two, she says that life was hard. And three, she mentions the gorillas. However, government submits that she's inordinately emphasizing the third factor, the gorillas, because that's the only one that will entitle her to remain in this country. That's all I have, gentlemen. I don't have any questions. Thank you. Thank you. Ms. Berners, do you want to take a minute in rebuttal? I just want to hit three points, if I may. First, I urge the Court to reread the portions of the record I cited regarding the testimony of her children. It's unclear whether or not actually the children came with her, tried to come, came after the application was submitted, and left. And that's one of the problems with this record, is that the petitioner didn't get the process that was due her. Secondly, neutrality is recognized as part of the imputed political opinion analysis. Not only would she not ask, not only would she not help the gorillas, she would not even ask her boyfriend to help them. They could the government. She's pro-government. There doesn't need to be a note saying, I'm persecuting you based on an opinion that I impute to you. And those are really the two points that I wanted to make. Thank you. Thank you, Ms. Vernon. Mr. Flynn, thank you. The case just argued is submitted. And again, Ms. Vernon, thanks to you and your associate for your attention to this case.
judges: Silverman, Gould, Bea